**JAUME v. MAISON BLANCHE CO. et al.**

**No. 17238.**

Court of Appeal of Louisiana. Orleans.

Feb. 26, 1940.

John C. Hollingsworth, of New Orleans, for appellant.

Henriques & Mayo, of New Orleans, for appellees.

WESTERFIELD, Judge.

Clement L. Jaume was injured on March 9th, 1937, while employed as a painter by the Maison Blanche Company, a department store, in the City of New Orleans, when he fell from a ladder to the cement floor. He was sent by his employer to the Touro Infirmary, where he remained about four weeks in a more or less unconscious condition under the care of a physician engaged by his employer. After leaving the hospital he was confined to his home until May 21st, 1937, when he returned to his employment and continued working for about nine and one-half months or until March 4th, 1938, when he was sent home by his employer in the belief that he was physically unable to work. On June 13th, 1938, one year and three months after the accident, Jaume brought this suit claiming four hundred weeks compensation for total permanent disability at the rate of Twenty Dollars per week less the period between March 9th, 1937, and May 1st, 1937, when he was paid his full salary by his employer, during the period of his disability immediately following the accident. The insurance carrier of the defendant, Maison Blanche Company, was made co-defendant.

The suit is defended upon the following grounds:

First, a plea of prescription or peremption based upon Section 31 of Act No. 20 of 1914, as amended by Section 1 of Act No. 29 of 1934;

Second, an exception of no right or cause of action;

Third, the Maison Blanche Company, plaintiff's employer, was not engaged in a hazardous trade or occupation as defined by the Workmen's Compensation Act, and,

Fourth, "that whatever conditions plaintiff was suffering from was not the result of the accident of March 9th, 1937".

The exceptions were overruled and the case proceeded to trial upon the merits resulting in a judgment in favor of the defendants dismissing plaintiff's suit, from which judgment the plaintiff has appealed.

On the merits defendants mainly relied upon their contention that the disability of the plaintiff, for which this suit was filed, did not result from the accident, but from some other cause and was, therefore, not compensable. However, in brief and in argument in this Court, much emphasis is given their exceptions of prescription and of no cause and of no right of action.

We shall first consider the plea of prescription.

Section 31 of the Workman's Compensation Act, No. 20 of 1914, as amended by Act No. 85 of 1926, and Section 1 of Act No. 29 of 1934, reads as follows:

"That in case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties shall have agreed upon the payments to be made under this act or unless within one year after the accident proceedings have been begun as provided in Sections 17 and 18 of this Act. Where, however, such payments have been made in any case, said limitations shall not take effect until the expiration of one year from the time of making the last payment. Also, where the injury does not result at the time of, or develop immediately after the accident, the limitations shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the said proceedings have been begun within two years from the date of the accident."

The plaintiff has attempted to show that this case falls within the exception described in that portion of the quoted section which reads "where the injury does not result at the time of, or develop immediately after the accident, the limitations shall not take effect until the expiration of one year from the time the injury develops". Opposing counsel insist that this contention of the plaintiff was improperly made, since it was presented in the form of a supplemental petition, the effect of which was to enlarge the allegations of the original petition, so as to present a new cause of action. Whatever merit there may be in this proposition, as applied to ordinary litigation, in view of the fact that this is a compensation suit, we are of opinion that the judge, a quo, was correct in overruling it since the compensation statute expressly requires that ordinary rules of pleading be relaxed. In order to determine the question of prescription we must consider the evidence to ascertain whether the year mentioned in the statute begins to run from the date of the accident or from some later date when its latent effects, if indeed there were any latent effects, were first manifested.

There is no question but that the plaintiff was seriously injured on March 9th, 1937. According to the allegation of his petition "he suffered an extensive skull fracture accompanied by profuse nasal hemorrhage indicating a fracture across the floor of the anterior fossa of the skull accompanied by permanent loss of smell and causing or aggravating the growing of cataracts upon plaintiff's eyes and accompanied by general weakness, hypesthesia and hypalgesia of the left side of the body, diminished hearing, tender spine and chest and other injuries, all caused and/or aggravated by plaintiff's said fall and injury, as a result of which plaintiff is totally and permanently incapacitated to carry on his duties as a painter or any similar class of work, and, in fact, on account of the serious brain injury and its effect and the aggravation resulting and flowing from such injury plaintiff is totally and permanently incapacitated to perform any class of work". However, plaintiff in his supplemental petition, which was filed on July 1st, 1938, three days after the exception of prescription had been filed by the defendants, alleged that the accident of March 9th, 1937, did not immediately produce permanent disability, which was the result of a slow and unrecognized process of development, which did not manifest itself until May 1938, when he was, for the first time, informed by attending physicians

that his brain had been injured as a result of the fall and that this brain injury "did not evidence itself by paralysis immediately as above averred, but petitioner is now advised, informed and charges that scar tissue formed upon petitioner's brain and the damage to petitioner's brain has now developed, so that at the time of filing this suit, presently, and increasing in the future, he is affected mentally and emotionally, and additionally there had developed a loss of the sense of smell, the causing or aggravating of cataracts upon plaintiff's eye or eyes, and additionally had reduced the vision of plaintiff's left eye (even with corrective glasses) to ⅖ths of normal vision, and that the deposits have formed are caused by said injury or aggravated by said injury on the surface of both cornea indicating uveitis, together with many vitreous opacities in each eye".

Jaume testified that after he returned to his employment with the Maison Blanche Company he did the same sort of work he was doing before, but that he was "full of pains", nevertheless, he says he carried on in spite of the pains because he needed the money to support himself and his family. His employer testified that Jaume's work, after the accident, was as efficient as the work done by him before the accident. His pains Jaume said, consisted of a continuous headache and dizziness from which he suffered when he attempted to mount his painter's ladder. He was, at the time of the trial, fifty-three years of age and had been married four years; that after the accident he was irritable and morose and unable to have sexual intercourse with his wife.

Mrs. Jaume corroborated her husband's statement concerning his irritability and emotional deficiency, saying that she first noticed this change in her husband's condition two months after the accident.

Dr. Gordon Johnson, who testified on behalf of plaintiff, examined him in April, 1938, and found that he was suffering from "bi-lateral cataracts" and that he complained of "pains in the back, dizziness, headaches, loss of sense of smell and generalized weakness". Dr. Johnson, who had seen the clinical records of the Touro Infirmary, was asked whether a man who had exhibited the symptoms mentioned in that chart suffered from a serious brain injury and he replied in the affirmative. He also found that Jaume had defective teeth and discussed at length the various symptoms to which his attention was directed, but added nothing further of interest or importance except of a cumulative nature.

Dr. Dean Echols, testifying for the plaintiff, stated that he examined Jaume first in May, 1938, and then in April, 1939, and that he also considered the clinical record of the Touro Infirmary together with the nurses' notes, which were handed him by plaintiff's counsel. Dr. Echols declared that he believed that Jaume was incapacitated to do the work he was doing before the accident and that he thought his condition was due primarily to the accident, but during a long cross-examination by counsel, he indicated that he was in doubt, as appears by the following statement he made in answer to a question as to his opinion, in view of the fact that the plaintiff had returned to work two and one-half months after the injury, and remained there for nine and one-half months, without complaint, doing the same work that he did before.

"Well I can conceive a man not making complaints for various reasons, yet he had them and did not complain, but I would say if he returned to work and worked for a year and did not suffer from the things he said he had, then I would be unwilling to attribute his present condition to the injury."

The next expert who testified for plaintiff was a dentist, Dr. David M. Prowell. He stated in effect that Jaume's teeth were not in a condition to cause the symptoms of dizziness and headaches with which Jaume was said to be constantly afflicted.

The defendant caused Jaume to be examined by a number of physicians, Dr. Edmund McC. Connely, a brain specialist, Drs. Victor C. Smith and William B. Clarke, eye specialists; Dr. W. P. Bradburn, general surgeon and physician; Dr. S. M. Blackshear, ear and nose specialist; Dr. Emile Bloch, general practitioner and Dr. Gilbert C. Anderson, another brain specialist, who was called in consultation while Jaume was in the hospital. All of these physicians testified on behalf of defendant except Dr. William B. Clarke, who was ill at the time of the trial, however, his report of his examination is in evidence.

According to Drs. Smith and Clarke, Jaume had senile cataracts on both eyes together with uveitis, which is an infection or inflammation of the eyes and that

these conditions were not due to trauma and not connected with the accident.

It is probable that the cataracts were mainly the cause of Jaume's disability since the evidence is to the effect that the symptoms of which he complained, the dizziness and headaches and faulty vision, are characteristic of cataracts. Jaume's defective teeth may also have had much to do with his disability.

Dr. Connely and Dr. Bradburn testified that they could see no connection between the complaints made by plaintiff and the accident of March 9th, 1937, and expressed the opinion that the injury to the brain and skull, caused by the accident, had entirely cleared up otherwise it would have been impossible for him to have gone back to work for nine and one-half months climbing ladders and doing paperhanging without complaint and as efficiently as he did before the accident.

Dr. Blackshear found that Jaume had defective hearing, but was of the opinion that it was not sufficient to cause disability and that there was a defection of the nasal septum which appeared to him as traumatic, but there is no contention that Jaume's nose was injured in the accident and no evidence to that effect.

Dr. Bloch, who was the first one to treat Jaume, declared that the injury to his brain and skull had entirely cleared up when he discharged him and told him he might return to work.

It is clear from this review of the medical testimony that Jaume had failed to prove that his present disability is due to the accident, but if it were otherwise and he had been able to show that the accident caused all his trouble, there is nothing to indicate that his present disability was the delayed result of his injury, of which he could have no knowledge, or ability to anticipate so as to prevent the running of prescription, or defer its starting point to such time as the result was made manifest.

■ The provision of the act relied upon—Section 31 of Act No. 20 of 1914, as amended, was intended to prevent an injured workman from losing his right to compensation for an injury which does not immediately manifest itself, as for instance, an eye injury.

In Lewis v. Texas Company et al., 169 So. 181, 183, the Court of Appeal for the Second Circuit, in speaking of this clause of the statute, said:

"It is clear that this added clause in no way deals with a right of action arising from death occurring more than one year after the date of an accident, even though the death was caused by the accident; and it does not in any way amend or destroy subsection 2, § 8 of Act No. 242 of 1928 (page 357), which limits the right of action for death under the compensation act to those deaths occurring less than one year after the accident. This added clause only deals with the right to sue for an injury caused by an accident when the injury did not develop immediately after the accident, such as an eye injury, which did not cause loss of the eye until a month after the accident."

See, also, Stirling v. Industrial Lumber Company, La.App., 152 So. 120; Doby v. Canulette Shipbuilding Company, Inc., La. App., 156 So. 51; Heidecker v. Fidelity & Casualty Company, La.App., 153 So. 35; Dodd v. Lakeview Motors, Inc., La.App., 149 So. 278; Pitts v. M. W. Kellogg Company, Inc. et al., La.App., 186 So. 389.

■ In regard to the impairment or destruction of Jaume's capacity for sexual intercourse, there is no medical testimony to support Jaume's claim in this respect and we do not consider his unsupported statement sufficient.

■ Our conclusion on this point is that prescription was not interrupted by any delayed effect of the accident so as to bring the plaintiff's claim within the provisions of Section 31 of the Compensation Statute, as amended, and postpone the beginning of the prescriptive period of one year from the date of the accident to some later date fixed by the manifestation of latent injuries.

■ Finally, we note the contention of plaintiff's counsel to the effect that it is the duty of an employer to serve a copy of the report of the medical examiner concerning the condition which he found the employee in as a result of his examination, on the employee, and that such notice was not given. The effect claimed for this omission is to prevent the running of prescription from the date of the accident until such time as the copy is served upon the injured employee. The provision of the act relied upon—paragraph 2 of sec-

tion 9, as amended by Act No. 38 of 1918, p. 57, reads in part as follows:

"It shall be the duty of the employer to cause such examination, provided for in paragraph 1 of this Section to be made of the injured employee immediately after knowledge or notice of the accident and to serve a copy of the report by his medical practitioner of such examination upon the employee within six days after such examination."

No such penalty is mentioned in the Act, which says that "if no such examination be made and report furnished by the employer within that time, the employee shall furnish a report of the examination made by his medical practitioner to the employer, for which the employee shall be entitled to receive from the employer the sum of one dollar. Upon the receipt by either party of such a report from the other party, the party receiving it, if he disputes such report or any statement therein, shall notify the other party of that fact within six days, otherwise such report shall be prima facie evidence of the facts therein stated in subsequent proceedings under this act". In other words, if the employer does not obtain and furnish the employee with a copy of the report of the medical examiner, the employee may obtain a report and serve a copy upon the employer and be paid one dollar for the service. This provision is doubtless intended to prevent dispute concerning the character of the employee's disability. The succeeding paragraph of the act declares that:

"If there be any dispute thereafter as to the condition of the employee, the Court, upon application of either party, shall order an examination of the employee to be made by a medical practitioner appointed by the Court. The fees of such examiner shall be fixed by the Court at not to exceed ten dollars, and shall be paid in advance by the applicant. Such medical examiner shall report his conclusions from such examination to the Court, and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this act." Section amended and re-enacted by Act No. 38 of 1918.

There is nothing to indicate that prescription is in the least affected by the failure to serve a copy of the report by the employer or, for that matter, by the employee. This contention is without merit.

It follows that the judgment appealed from must be and it is hereby affirmed.

Affirmed.